OPINION
{¶ 1} Defendant-appellant Michael Lee Cox appeals his conviction and sentence in the Richland County Court of Common Pleas on one count of felonious assault. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND THE CASE {¶ 2} Appellant resides across the street from a bar known as the Rainbow Inn. On April 17, 2002, Vickie Blevins ("Blevins") visited the Rainbow Inn to celebrate her birthday. She consumed alcohol, and was later found to have a blood alcohol level of .25. At the same time, she was under the influence of two prescription medications, Prozac, an anti-depressant, and Zanax, an anti-anxiety medication.
 {¶ 3} At trial, Blevins testified she was leaving the bar and attempting to unlock her car door, when appellant snatched the keys and dangled them in the air. She tried to get them back, and appellant threw them to the ground. When she reached down to pick them up, appellant wrestled with her on the ground. On the ground, Blevins claimed appellant stuck his finger into her vagina. They ended up behind her car, and appellant threw her on the hatch of the car. He smashed her head into the side of the car, and she lost consciousness. When she regained consciousness, she reentered the bar. The other patrons and the bartender helped her clean up, and she discovered her money and cigarettes were gone. The police and emergency medical personnel arrived at the scene, and transported Blevins to the hospital.
 {¶ 4} At the hospital, Blevins told the emergency room nurse two men tried to rape her seven to ten days prior to the incident herein. She testified, she was abducted days earlier, tied up and taken to a residence with a hot tub, and sexually assaulted. She testified she did not know the individuals and did not file a report. She explained she did not sustain any physical injuries as a result.
 {¶ 5} Blevins further testified an altercation occurred prior to the incident with appellant where another woman hit her in the nose. She explained the woman hit her only once, and she had no bleeding.
 {¶ 6} Officer Dietrich of the City of Mansfield, Division of Police, testified at trial he was dispatched to the Rainbow Inn on the evening of April 17, 2002. The dispatch arose from a female caller who had called in stating a man was dragging a woman around in the street area of this business. Upon arrival, he noticed Blevins crying and sobbing, and bleeding quite a bit. He testified she was visibly drunk. She had numerous abrasions, some lacerations throughout her entire body, including both of her legs and arms. She had some injury on her nose, the bridge of her nose, and also on her face to the right side of her eye.
 {¶ 7} Officer Dietrich testified, upon apprehension of appellant, he learned appellant's children were in the residence across the street from the bar. The children were later found in their underwear along some bushes.
 {¶ 8} Officer Dietrich proceeded to the hospital to interview Blevins. She related her version of events concerning the incident, stating she agreed to take appellant home, left the bar with him, and he took her keys and would not return them. Appellant attacked her, jumped on top of her, attempted to tear her clothes off, and slipped his hand under her shorts and into her vagina. She also related to Officer Dietrich an incident occurring approximately seven to ten days prior involving two men, and her being sexually assaulted by them.
 {¶ 9} Officer Dietrich contacted Blevins at her residence on April 20, 2002, where she viewed a photo array and identified appellant. Dietrich testified Blevins provided new information, including a bite mark on her hand. She indicated appellant was sexually harassing her at the bar, and eventually dragged her out of the bar, into the parking lot. She stated she dropped her keys, and appellant picked them up, but would not give them back. She told the officer appellant threw the keys. As she bent to pick them up, appellant pushed her to the ground and climbed on top of her person. Appellant groped her, tried to take her clothes off, and inserted his finger into her vagina. He stood up, and let her go. They both returned to the bar.
 {¶ 10} Additional trial testimony established Blevins was bleeding from the knees, the top of her ankles and her arms. The bar patrons and staff treated Blevins until police and EMS arrived. Appellant left the bar prior to the arrival of EMS and the police.
 {¶ 11} The Rainbow Inn bartender, Nichole Cyrus, testified Blevins was intoxicated on the night in question; beyond anything she had seen her do before, because it was her birthday. She also testified appellant was drunk, but had his composure about him. She stated there was a prior altercation between Blevins and another female outside of the bar that night. When appellant returned to the bar, Cyrus stated he was acting nervous, like he wanted to tell her something really important. He ordered a beer, and told her Blevins had slapped him.
 {¶ 12} Kathy Anderson drove by the Rainbow Inn at approximately 11:15 p.m. on April 17, 2002. She testified she saw a woman run across the street, and a man dragging her. The woman fell to her knees, but the man kept pulling her. The woman pulled back to get away from him. Anderson testified he looked like he was being aggressive with the woman, and she (Anderson) did not think he was simply helping the woman off the ground. Anderson went home and called 911. She later identified appellant as the man in the parking lot.
 {¶ 13} Officer Koontz testified concerning appellant's behavior while in the holding cell at the jail two hours after his arrest. He stated appellant pounded on his cell door, yelled vulgarities, and then urinated on the officer through the food tray door on the cell. Thereafter, appellant was placed in a padded cell.
 {¶ 14} Appellant was initially charged with rape, in violation of R.C. 2907.02, gross sexual imposition, a violation of R.C. 2907.05, felonious assault, a violation of R.C. 2931.01, and robbery, a violation of R.C. 2911.02. Prior to trial, the State moved to dismiss the rape and gross sexual imposition counts. The motion was granted.
 {¶ 15} On October 24, 2002, the trial commenced as to the robbery and felonious assault charges. Appellant filed a motion to exclude the evidence as to appellant's urinating on the police officer while in the holding cell. The trial court overruled the motion and allowed the testimony.
 {¶ 16} On October 30, 2002, the jury found appellant not guilty on the robbery charge, but guilty as to felonious assault. On October 31, 2002, the trial court sentenced appellant to a seven year prison term upon his conviction.
 {¶ 17} It is from this conviction and sentence appellant now appeals, raising the following assignments of error:
 {¶ 18} "I. The Trial Court Committed Prejudicial Error By Limiting Defense Counsel's Examination Of The Victim About A 8Prior Rape Which Occurred Seven To Ten Days Prior To This Alleged Crime Violating Defendant's Right To Due Process Of Creating An Unfair Trial As Guaranteed Under The Fourteenth Amendment Of The United States Constitution.
 {¶ 19} "II. The Trial Court Committed Prejudicial Error By Admitting Testimony Of Police Officers Concerning Conduct Of Defendant/appellant Long After The Facts Of The Alleged Crime Crating An Unfair Trial Violating The Defendant/Appellant's Right To Due Process.
 {¶ 20} "III. The Trial Judge Erred In Allowing The Excited Utterance Hearsay Testimony Of The Appellant's Minor Children, When Even If Admissible, The Same Being Highly Prejudicial Resulting In The Defendant Being Denied His Right To A Fair Trial.
 {¶ 21} "IV. The Manifest Weight Of The Evidence Was Insufficient To Support The Defendant/Appellant's Conviction Of Felonious Assault In Violation Of His Constitutional Rights."
 {¶ 22} Appellant also raises the following assignment of error in the supplemental brief permitted by this Court:
 {¶ 23} "I. Whether The Prosecution Committed Prosecutorial Misconduct By Knowingly Using Perjured Testimony Resulting In An Unfair Trial In Violation Of The Appellant's Sixth Amendment Right To A Fair Trial?"
 I, II, III {¶ 24} Appellant's first, second and third assignments of error raise common and interrelated issues; therefore, we will address the assignments together.
 {¶ 25} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173. Therefore, we will not disturb a trial court_s evidentiary ruling unless we find said ruling to be an abuse of discretion; i.e. unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. State v. Adams (1980), 62 Ohio St.2d 151,157.
 {¶ 26} Appellant maintains the trial court erred in limiting defense counsel's examination of the victim about a prior rape which occurred seven to ten days prior to the alleged crime, violating appellant's right to due process. We disagree.
 {¶ 27} Prior to trial, the State filed a motion to exclude evidence of the prior sexual assault alleged to have occurred seven to ten days prior to the offenses involving appellant. The trial court granted the motion in part, and overruled it in part. Specifically, the court allowed the defense to question Blevins with respect to the injuries claimed to have been caused by the attack, but precluded any questioning on the details of the alleged rape.
 {¶ 28} R.C. 2907.02(D) states, in pertinent part:
 {¶ 29} "Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."Evid.R. 404 states:
 {¶ 30} "(A) Character evidence generally
 {¶ 31} "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
* * *
 {¶ 32} "(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable."
 {¶ 33} Prior to commencement of the trial, the court stated:
 {¶ 34} "THE COURT: * * * The state's motion to exclude evidence of the prior sexual attack on the victim one week or so before this particular alleged offense is overruled in part. I do believe that the Defendants are allowed to put in evidence that attack to the extent that it might reveal origin of injuries which are claimed to have been caused by this attack, and maybe to some extent to show the victim's state of mind at the time that the attack happened, about her inebriation and so forth, which might go to her credibility. But I did withhold, with the understanding of the attorneys here, that there would not be any details of this particular alleged offense except source of injury, such as violence. I believe there was talk about hot tubs and things like that, which there would be no reason to go into those details; just as it relates to the source of injuries." Tr. at 5-6.
 {¶ 35} We find the trial court correctly admitted the testimony regarding Blevins' injuries from the prior alleged rape, as appellant was being tried for robbery and felonious assault. We find the trial court did not abuse its discretion in limiting the testimony regarding the prior rape.
 {¶ 36} We next address appellant's argument the trial court committed prejudicial error by admitting the testimony of police officers concerning conduct of appellant after the facts of the alleged crime, creating an unfair trial.
 {¶ 37} Specifically, appellant maintains the trial court should have excluded the testimony of Officer Koontz regarding appellant's conduct while in the holding cell. Officer Koontz testified:
 {¶ 38} "PROSECUTOR: * * * Is he still being disorderly at this time; is he still cussing you and calling you all those names?
 {¶ 39} "OFFICER KOONTZ: Yes, he is.
 {¶ 40} "PROSECUTOR: Is that the whole time you were in contact with him pretty much, he's just calling you an MF'er and saying I hate you cops?
 {¶ 41} "MR. ZALLER: Objection, leading, Your Honor.
 {¶ 42} "THE COURT: Sustained.
 {¶ 43} "PROSECUTOR: Was he disorderly the whole time?
 {¶ 44} "OFFICER KOONTZ: From the time we placed him under arrest he was disorderly."
* * *
 {¶ 45} "He was pounding, standing here in the window area (indicating). He was pounding, knocking and kicking on this door here.
 {¶ 46} "PROSECUTOR: Still screaming the cuss words and everything?
 {¶ 47} "OFFICER KOONTZ: Yes, he was.
* * *
 {¶ 48} "PROSECUTOR: Tell the jury what happened when you came up and tried to serve him with the Summons for child endangering.
 {¶ 49} "OFFICER KOONTZ: When I walked up he was standing to the right side of this doorway, which standing on the outside would be as depicted in K-1, the urinal area (indicating). As I was standing at the doorway area he turned, yelled fuck you, and attempted to urinate on me through this food tray door that was open.
 {¶ 50} "PROSECUTOR: Did any of his urine get on you?
 {¶ 51} "OFFICER KOONTZ: Some of it strayed on my pants and some of it got on the outside of my palm."
* * *
 {¶ 52} "We then opened up the door, cell door to J-5. He was just so disorderly and belligerent and nasty that we took him down the hallway and placed him inside a padded cell.
 {¶ 53} "PROSECUTOR: Is that a cell with padding all the way around?
 {¶ 54} "OFFICER KOONTZ: That's correct.
 {¶ 55} "PROSECUTOR: Did he make any gestures toward you at any time?
 {¶ 56} "OFFICER KOONTZ: He just continued being belligerent, flipped me off."
 {¶ 57} Tr. at 608, 613-614, 615.
 {¶ 58} The trial court noted:
 {¶ 59} "I am permitting it to come in because it's part of what's surrounding his mental attitude at the time that he was arrested. He's been portrayed in the trial by the Defendant as a good samaritan, one who was trying to bring the drunk victim out of the street, as one who was trying to see that she was driven to the next bar where she wanted to go since she was too drunk to drive herself, so from the prosecutor's perspective of the case this evidence is inconsistent with that sort of good samaritan attitude in regard to his flight attitude and antagonism toward the police, and that's why I'm letting it come in." Tr. at 480-481.
 {¶ 60} Appellant maintains the probative value of the evidence is outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
 {¶ 61} The State argues the evidence is logically admissible as relevant and responsive to appellant's counsel's portrayal of appellant as a "good Samaritan" in opening statements.
 {¶ 62} Although we would not find exclusion of appellant's past arrest conduct to be error, when applying Sage, supra, we are unwilling to conclude the trial court abused its discretion in allowing this evidence. Furthermore, upon review of the above statement of facts, we cannot conclude the outcome of the trial probably would not have been different in the absence of testimony of appellant's conduct subsequent to his arrest. Thus, appellant was not substantially prejudiced.
 {¶ 63} Appellant further contends the trial court erred in allowing the excited utterance testimony of appellant's minor children. Appellant maintains the testimony, even if admissible, is highly prejudicial, and results in appellant's being denied his right to a fair trial.
 {¶ 64} At trial, Patrolman Foster testified in examination by the court outside of the presence of the jury:
 {¶ 65} "* * * As I got close I could tell it was the children that were missing. I walked up, I didn't want them to be scared or run away from me so I kind of knelt down a little bit and was talking to them like you would a child. What are you girls doing here, and they all stood up. The smallest girl came over to me, and there is a medium sized girl, middle girl I call her. She walked over and I said, Why are you guys out here, what are you doing? The middle girl, who was crying, said that, My daddy put us out here, we're not supposed to come out or talk to the cops or we'll go to jail and we won't get to see our mommy again."
* * *
 {¶ 66} "PROSECUTOR: Were they afraid?
 {¶ 67} "OFFICER FOSTER: They were all three crying. The two small ones were crying more. The oldest girl wasn't crying as much, but they were all crying. They were upset."
 {¶ 68} Tr. at 630-631.
 {¶ 69} The trial court found the statements to fall within the excited utterance exception to the hearsay rule, stating:
 {¶ 70} "THE COURT: It looks to me like it's an excited utterance.
 {¶ 71} "MR. ZALLER: I'll object on the Record, but if you're going to let it in we'll leave it at that.
 {¶ 72} "THE COURT: It looks like they were in a very emotional state, as you would well expect a three and five year old to be. It sounds like the statement was made while the event was fresh in their minds as to what had put them there, so I will permit that evidence to come in as an excited utterance."
 {¶ 73} Tr. at 631-632.
 {¶ 74} Patrolman Foster then testified before the jury:
 {¶ 75} "I was trying to gain their confidence. They were crying. The two smaller girls stood up first and I said, Why are you guys out here, what's going on. The littlest one came toward me and the medium, the middle girl came to me. She was crying and I said, Why are you guys out here, and she said that Daddy had put us out here and told us that if we came out, if we talked to the cops that they would go to jail and they wouldn't get to their mommy again. Then the oldest girl walked up and was standing beside me. I told them that's not true and I picked the two up and had the oldest girl walk back to the car with me." Tr. at 636.
 {¶ 76} Evid.R. 803 provides, in relevant part:
 {¶ 77} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: ***
 {¶ 78} "(2) Excited Utterance: A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."
 {¶ 79} In State v. Wallace (1988), 37 Ohio St.3d 87, 89, the Supreme Court of Ohio, citing Potter v. Baker (1955), 162 Ohio St. 488, set forth a four part test to determine what constitutes an excited utterance:
 {¶ 80} "a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective,
 {¶ 81} "(b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,
 {¶ 82} "(c) that the statement or declaration relate to such startling occurrence or the circumstances of such startling occurrence, and
 {¶ 83} "(d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration."
 {¶ 84} Appellant specifically challenges the third requirement set forth in the test, requiring the statement relate to the occurrence or the circumstances surrounding the occurrence. Based upon our statement of facts set forth above, we find the trial court did not abuse its discretion in concluding the statement falls within the excited utterance exception to the hearsay rule. We find the statements inferentially, albeit vaguely, relate to the circumstances surrounding the occurrence. Assuming, arguendo, the trial court did err in admitting the statements, we find the admission of the statement did not substantially prejudice appellant, and the outcome of the trial would not have been different had the court excluded the statement.
 {¶ 85} Accordingly, appellant's first, second and third assignments of error are overruled.
 IV {¶ 86} In the fourth assignment of error, appellant raises a sufficiency of the evidence claim or, in the alternative, a manifest weight of the evidence claim. Specifically, appellant argues sufficient evidence did not exist to make a specific finding appellant "knowingly" caused serious physical harm to the victim.
 {¶ 87} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate courts function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.Id. at paragraph two of the syllabus.
 {¶ 88} When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant's conviction was based upon insufficient evidence.
 {¶ 89} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed.
 {¶ 90} The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 91} In the case sub judice, the jury was free to accept or reject any or all of the witnesses' testimony and assess the witnesses' credibility. Based upon the fact noted supra, we find there was sufficient, competent evidence to support appellant's conviction, and the same was not against the manifest weight or sufficiency of the evidence.
 {¶ 92} Appellant's fourth assignment of error is overruled.
 SUPPLEMENTAL ASSIGNMENT OF ERROR I {¶ 93} In the final assignment of error, appellant argues the prosecution committed prosecutorial misconduct by knowingly using perjured testimony resulting in an unfair trial. We disagree.
 {¶ 94} In State v. Iacona (2001), 93 Ohio St.3d 83, 97,2001-Ohio-1292, the Supreme Court of Ohio applied the following standard for a claim of this nature:
 {¶ 95} "`The knowing use of false or perjured testimony
constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'*** Such a claim is in the nature of an allegation of prosecutorialmisconduct, and the burden is on the defendant to show that '(1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.'"
 {¶ 96} Appellant maintains the alleged victim, Blevins, gave at least four different versions of what transpired the night in question between herself and appellant, all of which were given under oath. Appellant contends the prosecutor was aware of these inconsistent statements given prior to trial, but, nonetheless, used Blevins' testimony at trial without attempting to determine the truth or falsity thereof.
 {¶ 97} We note appellant did not object to the testimony at trial; therefore, waived all but plain error. Upon review, we conclude appellant has not met the burden set forth in Iacona, supra. While we note the inconsistent "versions" of the testimony, such inconsistency does not necessarily meet appellant's burden of demonstrating which of the versions were actually false. Further, appellant has not presented sufficient evidence to demonstrate the prosecutor knew any or all of the versions were actually false.
 {¶ 98} Appellant's final assignment of error is overruled.
 {¶ 99} The judgment of the Richland County Court of Common Pleas is affirmed.
By: Hoffman, P.J., Farmer, J. and, Boggins, J. concur.